1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROY SCHELL, CA Bar No. 208661
Tschell@schell-law.com
LAW OFFICES OF TROY SCHELL
269 West Bonita Avenue
Claremont, CA  91711
Telephone:   909.542.9471
Facsimile:   909.625.7772

Attorneys for Plaintiff,
CHEROKEE CHEMICAL CO, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHEROKEE CHEMICAL CO., INC. dba C.C.I., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SCOTT FRAZIER, an individual; AQUA NANO, LLC, an unknown corporation; ATLANTIC COAST POLYMERS, INC., a Connecticut corporation; and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. CaseNumber<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT;**<br>2. **INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS;**<br>3. **MISAPPROPRATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT;**<br>4. **MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT**<br><br>**DEMAND FOR JURY TRIAL** |

For causes of action against Defendants and each of them, Plaintiff alleges as follows.

# I.

## <u>SUMMARY OF THE ACTION</u>

1.  Cherokee Chemical Co., Inc. ("CCI") is an industry leader providing custom-blended chemical solutions businesses throughout the United States.  CCI is at the forefront of researching appropriate formulas to provide its proprietary customers the most effective, environmentally sound and economical solutions to its clients.

2.  In 2018, following five (5) years as an Executive Vice President for CCI, Scott Frazier ("Frazier") separated from employment with CCI.  As part of the separation, Frazier executed a termination agreement in which he agreed, in return for lucrative severance benefits and a release, that he would not  (a) access confidential information that was the proprietary right of CCI; or (b) solicit existing customers of CCI based upon his knowledge of the information learned while at CCI.   As CCI has now learned, Frazier has systematically utilized confidential  information that he took and he learned exclusively from CCI in attempting to steal customers of CCI for at least two (2) companies he had a direct and/or indirect economic interest in: Defendants Aqua Nano, LLC and Atlantic Coast Polymers, Inc.  Now, Frazier is using such misappropriated information in attempting to interfere with the business of CCI for his personal economic gain and for the benefit of his companies and other companies who are in direct competition with CCI.

3.  When Frazier left CCI, he did not return CCI's confidential information, nor did he disclose he had access and/or made copies.  CCI believes that Frazier continues to use such information to replicate CCI's proprietary information, none of which he has a legal right to possess.

4.  CCI believes that Frazier is utilizing  this confidential information inappropriately in an attempt to provide economic benefit for him either through (a) himself; (b) his companies; or (c) companies of others  to the detriment of CCI.  CCI

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

1 brings this lawsuit to protect its right in this regard in that Defendants have unlawfully

2 obtained this information and will protect itself and avail itself to all legal remedies

3 available, and for all other relief as the facts may warrant.

## II.

## THE PARTIES TO THIS ACTION

6.   Plaintiff is a California corporation licensed to do business and doing business in this state with its headquarters at 3540 E. 26th Street, Vernon, CA 90056, which is located within this judicial district.  The acts giving rise to this Complaint occurred within this judicial district, and breaches thereof, as well as the tortious misconduct complained of arose out of actions taken between the parties within and affecting this judicial district, and, accordingly, venue is proper within this judicial district.

7.   Defendant Scott Frazier ("Defendant" or "Frazier") is an individual who formerly was employed by Plaintiff and currently resides in the State of Texas.

8.   Defendant  Aqua Nano, LLC ("Aqua Nano") is a limited liability company who is owned and/or operated by Defendant Frazier.

9.   Defendant Atlantic Coast Polymers, Inc. ("ACP") is a corporation, whose principle headquarters is located in the State of Connecticut.

10.   Defendants sued herein as DOES 1 through 100, inclusive, are unknown presently to Plaintiff who therefore utilizes such fictitious designations.  Plaintiff will seek leave to amend this Complaint to insert their true names and capacities if and when ascertained.  Plaintiff is informed and believes and based thereon alleges that each of the unnamed Defendants is responsible to Plaintiff in the same manner as the identified Defendants.

## III.

## JURISIDICTION AND VENUE

11.Plaintiff brings its complaint under federal diversity jurisdiction, 28 U.S.C.

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

1   1332, as the parties are completely diverse in citizenship and the amount in

2   controversy exceeds $75,000.

3        12. This court has jurisdiction pursuant to 28 U.S.C. §1331 because this matter

4   Involves claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836

5   et seq.  This Court has supplemental jurisdiction over the remaining claims pursuant

6   to 28 U.S.C. §1367, as the remaining claims form part of the same case or

7   controversy.

8        13. Venue is proper in this District pursuant to 28 U.S.C. §1391 (b)(2) because

9   a substantial part of the events giving to the claims occurred in this District.  For

10   example, Plaintiff's business including Frazier's job responsibilities, occurred within

11   this District.

## IV.

## FACTUAL BACKGROUND

### A. CCI and its Proprietary Information.

16        14. CCI is a California Company that is in the highly competitive business of

17   providing custom-blended chemical solutions to third parties throughout California

18   and the United States.  CCI is at the forefront of researching appropriate formulas to

19   provide its proprietary customers the most efficient, environmentally sound and

20   economical solutions to its clients.

21        15. CCI has expended significant resources in developing its sourcing, design,

22   formulation, manufacturing, warehousing, customer lists and distribution logistics and

23   operations. For example, CCI has developed a proprietary system in creating

24   formularies specific to its clients' needs utilizing the latest science and technologies in

25   accomplishing the same.  As another example, CCI employs a proprietary system to

26   track its customers and product utilized through a variety of manuals and processes to

27   memorialize those procedures.  This customer list is proprietary and of a great

28   economic value, in that is not known outside of CCI and CCI utilizes various

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

contractual documents, including non-disclosure agreements and employment agreements, to protect this information from disclosure.   These materials and knowhow were developed by CCI over many years, and at great expense, and CCI considers them proprietary, confidential trade secrets.

## B. CCI Vigorously Protects Its Confidential Information.

16. CCI's policies and practices robustly protect confidential and proprietary information, including, the information misappropriated by Defendant here.   CCI requires all of its employees to enter into non-disclosure agreements that obligate them to safeguard the company's confidential, proprietary and trade secret information. This information included confidential customer lists, as well as profiles of CCI's clients, proprietary formulas,  financial information, sales, business plans and pricing information.  As further discussed below, employees must sign these agreements as a condition of their employment and are consistently reminded of their obligation in this regard.

17. In addition, CCI policy forbids employees from sending confidential information to unauthorized third parties, and event to own personal email addresses. This policy is conveyed to employees in a number of ways, both formally and informally, through reminders to the employees as to the safeguarding of such confidential information.

## C.    CCI hires Frazier subject to Non-Disclosure and Non-Compete Agreements which Frazier willfully violates.

17. On or about 2012, Frazier began working as an Executive Vice President on behalf of CCI, with its principal place of business in the City of Vernon, County of Los Angeles, State of California. As consideration for employment, Frazier executed a written employment contract which provided the responsibilities of both Plaintiff and Frazier.   Within the agreement, Frazier executed two significant restrictive covenants that were required to be abided by similar to all employees of Plaintiff.   The first was a nondisclosure agreement and the second was a noncompete agreement.   The

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

former forbade Frazier from ever using, disclosing or revealing any confidential information that he acquired during the course of working on behalf of CCI except on behalf of CCI.  Confidential information included, but was not limited to, customer names and information, customer requirements, chemical formulae, and business methods and practices utilized by CCI.  The latter forbade Frazier from competing by soliciting any customer that he had become aware of or serviced on behalf of CCI for a period of 3 years following the termination of his employment. These agreements for Frazier, and all employees, survive following termination of employment given the proprietary nature of the business.

18. Prior to being hired by CCI, Plaintiff is informed and believed that Frazier had previous experience within the chemical solutions business when he was hired as an Executive Vice President.  Given his leadership role, Frazier was afforded  access to the inner workings of CCI and all of the proprietary information that it had developed over the past decades.  In particular, Defendant Frazier, due to his role in the company, has access to the Company's proprietary information including, but not limited to,  access to (a) costs related to raw material; (b) costs related to shipping; (c) costs related to containers; (d) formularies for the chemicals that were being sold; and (e) customer lists; pricing structure for manufacturing; pricing structure related to disposal. Over the next five (5) years, Frazier worked for CCI and developed relationships within the chemical solutions business.

19. As a valued employee and an Executive Vice President, Plaintiff compensated Defendant in his designated role at the Company. Further, throughout his tenure, Defendant became privy to proprietary information of the business.  He was compensated for the services on a salary basis, along with bonuses, at or exceeding industry averages. In addition, in the latter portion of his employment, certain bonuses were provided to Frazier's limited liability company, Aqua Nano, LLC for work that was performed.

20. Despite the same, Defendant Frazier concocted a scheme

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

to misappropriate the confidential information he possessed at CCI for personal economic gain while still employed at CCI.  In particular, he began to compete with CCI with his sham corporation, Aqua Nano, LLC.   Furthermore, in an effort to further his unlawful scheme, Plaintiff is informed and believes that Frazier held an ownership position within  Aqua Nano and disclosed all of his contractual commitments, customer lists and proprietary information to Aqua Nano and others  for his pecuniary gain.  Plaintiff is informed and believes that  Frazier, and ultimately Aqua Nano, utilized this information to steal clients from CCI.  Frazier utilized his influence as an employee of CCI to influence a longstanding customer of CCI to unwittingly switch its business for his own pecuniary gain due to the misappropriation of proprietary information.  Specifically, CCI had a long standing relationship with the City of Decatur, Arkansas who purchased all of its chemical products by CCI.  Frazier was the account representative on behalf of CCI for this important client and typically worked with the City of Decatur to fulfill its chemical needs.  However, despite the fact that he had executed various agreements during employment  following employment with confidentiality and non solicitation clauses, Frazier nevertheless concocted a scheme to switch the seller of the chemicals to Defendant ACP at a lower price  without ever revealing the source of those products to the City of Decatur.

21. Plaintiff is informed and believes that Frazier has either a direct and/or indirect interest in ACP.  Due to the foregoing acts, Frazier and ACP were provided an economic benefit due to the fact that they utilized proprietary information to their benefit to the detriment of CCI.  Plaintiff is informed and believes that ACP was well aware that the CCI customer had traditionally purchased from CCI, and nevertheless went along with this nefarious scheme along with Frazier to (under)sell product to the customer without revealing to the customer the source of those products.  Frazier thereby breached both the confidentiality as well as the noncompete provisions in his various agreements by contacting and soliciting a customer of CCI, and then selling that customer product through another source, ACP, which both Frazier and ACP

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

knew were in violation of the long standing relationship between the customer and CCI, and Frazier and Aqua Nano's financial connections.  Despite the same, ACP continued to engage in this unlawful scheme to the detriment of CCI.

22. Plaintiff is informed and believes that Defendant Frazier repeated this act in misappropriating CCI's proprietary information, while employed, on multiple occasions for his economic benefit to the harm of CCI. Defendant utilized the accumulated proprietary information for his personal gain and against that of the Plaintiff's interest by creating a business in the mirror-image of Plaintiff for his benefit, the benefit of his company and companies of others.

23.   By December of 2017, significant disputes and disagreements had developed between CCI and Frazier and Aqua Nano, culminating in a decision by CCI to terminate Frazier due to allegations of him bribing customers for business.  In light of his past services, and in return for a mutual exchange of releases, CCI agreed to give Frazier a severance package of the equivalent of 4 months' worth of his traditional salary to give him a chance to relocate and acquire new customers so as not to deal with customers who were part of CCI's database.  After approximately 4 months, Frazier complained that that had not been insufficient time for him to accomplish these ends, and CCI, charitably, agreed to extend the terms of his severance agreement for an additional first 4 and then a final 4 months so that by all accounts, while Frazier's employment with CCI terminated in December of 2017, all of his severance benefits terminated on October 31, 2018.  The claims asserted in this Complaint are all post-release claims.

24. An Employment  termination Agreement was written and executed which, too, contained a confidentiality clause prohibiting Frazier and Aqua Nano from disclosing any proprietary information belonging to CCI and prohibiting them from soliciting or accepting any business from any customer whom he knew was that of CCI.

8

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

25. Despite the existence of both his original agreements pertaining to disclosure of proprietary information and his newly executed termination agreement with the same provisions pertaining to disclosure and solicitation, Frazier willfully violated these agreements in several respects and in multiple instances.

**C. Following Resignation, Defendant Frazier Continues to Misappropriate CCI's Confidential Information.**

26. Following his termination, CCI reminded Frazier of his contractual and Legal obligations regarding CCI's confidential, proprietary and trade secrets. However, immediately following his separation from employment, CCI was advised by multiple accounts that Frazier, by and through his sham entity, Aqua Nano, LLC, were attempting to infiltrate its customer list(s) and attempting to divert business to its newly formed corporation.

27. As an example, on our about November 21, 2019, Frazier utilized the proprietary information obtained during his course of employment with CCI to divulge internal pricing information to a competitor. In particular, Frazier advised executives of a competitor at a public setting in Colorado Springs, Colorado that CCI's true cost of concentration of one its product and where they were able to obtain the raw materials at a marked discount. During the same conversation, Frazier misrepresented to these same competitors, an attempt to steal business by divulging a and disparage CCI that it unlawfully purchased and agreed to resell hazardous chemical product at a certain price despite knowing the fact that this was untrue and were purchased in a legal manner. Plaintiff is informed and believes that Frazier was malicious and intentional concerning this conversation in an attempt to undermine CCI and to injure its business reputation with the client.

28. As another example, Frazier has been willful in spreading lies and misinformation concerning CCI in a commercial setting. In particular, over the past several months and including January of 2020, Frazier has lied about CCI in advising clients that CCI that has a history of 'watering down chemical' and has provided such

statements both orally and in writing.  As another example. Frazier advised client(s) that CCI bribed clients for their business with the intent to interfere with its business by casting doubt on its competency and honesty. Specifically, Frazier has stated that Plaintiff, by and through its principal, has unlawfully purchased houses for real estate for clients for placement of contracts; provided cash payouts to clients for placement of contracts; purchased  watercraft to clients for placement of contracts;  purchased All-Terrain Vehicles ("ATV"); provide payments to clients to avoid tax liabilities;  and provided other tangible items to clients for the placement of contracts. In addition, Frazier has consistently told current/former employees of CCI and of competitors of this alleged nefarious conduct to the detriment of CCI.    In other words, Frazier has been brazen about his public statements that Plaintiff is a dishonest company and bribes people to get business.   These  statements are patently false and Defendant is aware of that fact. This conduct was willful which has caused damage to CCI's reputation with the intent to intentionally interfere with its business.

29. Furthermore, CCI was advised by multiple client(s) that Defendant Frazier would utilize the proprietary information he had learned from CCI for his personal benefit or for the benefit of his company or the companies of others.  In particular, he would divulge that, while he knew they were a CCI customer, he had a new business and would provide better pricing in that he knew the proprietary pricing model of CCI. In addition, Frazier would disparage CCI in attempting to secure the business.  Plaintiff is informed and believes that Defendant Frazier flaunted the fact that he was privy to the CCI model and would use that proprietary information to his advantage in stealing business from CCI.

**D. The Stolen Information is Confidential and Proprietary, and its Misappropriation has Damaged CCI.**

30. The information used by Frazier, including customer lists, formularies and

10

pricing, constitutes confidential, proprietary and trade secret information.  This information allows Frazier to copy significant parts of CCI's work in these specific designated areas, without investing the substantial effort, time and resources that Frazier would need to even attempt to develop on his own.  This is information that CCI does not make available to competitors or to the public.

31. The stolen pricing information also discloses information about prices that CCI has negotiated with certain vendors, which is competitively sensitive and closely guarded.  This pricing information could allow a competitor such as Frazier to obtain the same or better pricing from its suppliers by leveraging CCI's internal and confidential pricing information.

32. There can be no doubt that the confidential and proprietary information specifically exfiltrated by Frazier has independent value from being not generally known and the information in them could not be readily ascertainable through proper means.

33. The Defendant willfully used the proprietary information received, gained and created for the exclusive usage of the Plaintiff  for his personal benefit, the benefit of Aqua Nano, the benefit of ACP, and the benefit of others  by undercutting the Plaintiff's relationships to their clients effectively taking them away.

34. By Defendant's intentional acts, Plaintiff suffered a severe loss to its contractual relationships with clients thereby impacting their goodwill and reputation within the chemical development and selling community.

## V.

### CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF

**Breach of Contract Against Frazier**

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

35. Plaintiff incorporates by reference all of the preceding paragraphs as if fully set forth herein.

36. In connection with his employment, Frazier entered into an employment termination agreement as more fully  described above with CCI which provides various restrictive covenants regarding confidentiality and non-solicitation agreements.  This was agreed to by Defendant Frazier.

37. CCI performed all of its obligations under the termination agreement.

38. Frazier breached his termination agreement with CCI, including but not limited to as described above, disclosing CCI's confidential, proprietary and trade secret information to his Sham Corporation Aqua Nano, a direct competitor ACP and others,  without legal justification or excuse.

39. As a direct and proximate result of this breach, CCI has sustained damages in an amount to be proven at trial.

## SECOND  CLAIM  FOR RELIEF

### Intentional Interference with Business Relations against All Defendants

40. Plaintiff incorporates by reference all of the preceding paragraphs as if fully  set forth herein.

41. Defendants position allowed him to participate in the development of Plaintiff's business.   Moreover, he was able to negotiate and help in client relations thereby evidencing that he is an agent of the Plaintiff.

42. Defendant's agency required him to act in the highest good faith because he  was operating for the interest of the Plaintiff not for his own behalf.  Here, he used the information sustained from years of services against the Plaintiff.

43. Defendant breached those confidences because he was using the proprietary  information to his own personal benefit, the benefit of Aqua Nano, the benefit of ACP, and the benefit of others.

44. Plaintiff is entitled to the applicable damages allowed by law and punitive damages.

1
2

**THIRD CLAIM  FOR RELIEF**

3

**Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act**

4

**Against All Defendants**

5

6      45. Plaintiff incorporates by reference all of the preceding paragraphs as if

7    fully set forth herein.

8      46. Plaintiff's confidential, proprietary and trade secret information are

9    protected under the DTSA, 18 U.S.C. §1836 et seq.

10      47. Plaintiff's confidential, proprietary and trade secret information relates to

11    products and services used, sold, shipped and/or ordered in, or intended to be used,

12    sold, shipped and/or ordered in interstate commerce.

13      48. The information derives independent economic value by not being

14    accessible, through proper means, to competitors such as ACP and others.   The

15    information is also not readily available to the public or competitors of CCI.

16      49. CCI keeps the trade secret information alleged in this Complaint

17    confidential and has undertaken reasonable efforts to maintain the trade secrets at

18    issue, as discussed above.  CCI's trade secret information described herein derives

19    independent economic value from not being generally known to the public or others

20    who could obtain economic value from their disclosure or use (such as competitors).

21      50. Frazier's conduct constitutes a misappropriation and misuse of CCI's

22    confidential information in violation of the DTSA because Frazier used and/or

23    disclosed the information without CCI's consent.  Further, Frazier acquired the

24    information under circumstances giving rise to a duty to maintain the information's

25    secrecy and limit its use.  Frazier owed that duty to CCI as an agent, employee and

26    representative of CCI.

27      51. Frazier has not returned the information he took from CCI.  Upon

28

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

1    information and belief, Frazier continues to retain and use CCI's trade secret and

2    confidential information.

3         52. Frazier's conduct constitutes a willful and malicious misappropriation of

4    CCI's confidential information.

5         53. CCI has suffered and will continue to suffer damage and irreparable harm,

6    absent immediate injunctive relief.  Because CCI's remedy at law is

7    inadequate, CCI seeks preliminary and permanent injunctive relief to recover and

8    protect its confidential, proprietary and trade secret information and the competitive

9    and other benefits that information confers.

10        54. Thus, CCI is entitled to preliminary injunctive relief, restitution,

11   compensatory and exemplary damages and reasonable attorney fees pursuant to 18

12   U.S.C. §1836.

13                    **FOURTH CLAIM FOR RELIEF**

14   **Misappropriation of Trade Secrets under the California Uniform Trade Secrets**

15                  **Act, Cal. Civ. Code § 3426 *et seq.***

16                      **Against All Defendants**

17        55. Plaintiff incorporates by reference all of the preceding paragraphs as if

18   fully set forth herein.

19        56.  CCI's Information, customer lists, pricing, business plans, and

20   formularies,  plans, manuals, programs and procedures constitute trade secrets as

21   described above and as defined by the California's Uniform Trade Secrets Act.

22        57.  CCI keeps the trade secret information alleged in this Complaint

23   confidential  And has undertaken reasonable efforts to maintain the trade secrets at

24   issue, as discussed above.  CCI's trade secret information described herein derives

25   independent economic value from not being generally known to the public or others

26   who could obtain economic value from their disclosure or use (such as competitors).

27        58.  Such confidential information constitutes trade secrets within the meaning

28   of  California Civil Code §3426.1.

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

59.  Defendant Frazier misappropriated CCI's trade secret information by utilizing   such information improperly, as described above, in violation of his Employment Termination Agreement and providing information to the other defendants.

60.  Defendant knew or should have known under the circumstances the information  misappropriated was trade secret information.

61. CCI is informed and believes, and on that basis alleges that Defendants are now  using CCI's trade secrets, without its consent, to steal its clients by only utilizing such knowledge.

62.  Defendant's misconduct detailed herein constitutes misappropriation of CCI's  trade secrets and violations Section 3426 *et. seq.*  of the California Civil Code. As a direct and proximate result of Defendant's conduct, CCI has been damaged in an amount to be proven at trial.  CCI has also incurred, and will continue to incur, additional damages, costs and expenses including attorney's fees as a result of Defendant's misappropriation.  As a further proximate result of the misappropriation and  use of CCI's trade secrets, Defendants were unjustly enriched.

63. Pursuant to Section 3426.2 of the California Civil Code, CCI is entitled to  prohibit from Defendants from using, disclosing and/or otherwise benefiting from CCI's trade secrets, to eliminate any commercial advantage that Defendant may otherwise derive from his misappropriation, and to require Defendant to return to CCI all confidential information, documents and any other misappropriated materials.

64. Pursuant to Section 3426.2 of the California Civil Code, CCI is entitled to recover  its damages incurred by virtue of Defendant's wrongful misappropriation of their trade secrets, in addition to disgorgement of all amounts by which Defendant has been unjustly enriched, or the payment of a reasonable royalty, in an amount to be proven at trial.

65. In performing the conduct described herein, Defendant acted willfully and

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

1   maliciously, intending to injure CCI and to wrongfully obtain an advantage at CCI's

2   expense.  Pursuant to Section 3426.2 of the California Civil Code, CCI is entitled to

3   all remedies under the law to compensate CCI, including but not limited to an award

4   of exemplary damages against Defendant.

5          66.   Pursuant to Section 3426.2 of the California Civil Code, CCI is also

6   entitled to an award of attorneys' fees and costs incurred in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief, according to proof, as follows:

1. For compensatory special damages for the loss of goodwill and penalties subject to proof at trial.
2. For compensatory damages for the loss of profit as a result of the Defendant's actions.
3. For compensatory special damages for business expenses, and interest thereon, in an amount accordingly to proof at the time of trial.
4. For restitutionary damages for the breach of payments rendered to Plaintiff per their employment agreement according to proof at the time of trial.
5. For punitive, enhanced and/or exemplary damages, including but not limited to double damages and unjust enrichment to the fullest extent available under applicable law;
6. For prejudgment interest;
7. For reasonable attorneys' fees pursuant to applicable statute.
8. For costs of suit including expert witness fees.
9. For injunctive and provisional remedies, as appropriate, as well as an accounting to the fullest extent available under applicable law; and
10. For such other equitable and further relief as the Court may deem proper.

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES

1

2

3
February__24___, 2020                    **LAW OFFICES OF TROY A. SCHELL**

4

5                                        By:  /S/
                                             Troy A. Schell
6                                            Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHEROKEE CHEMICAL COMPANY'S COMPLAINT FOR DAMAGES